IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CANON FINANCIAL SERVICES, INC., | : |
| Plaintiff, | : |
| v. | : Civil No. 23-167 (RBK/SAK) |
| | : **OPINION** |
| DIRECT IMPRESSIONS, INC. *et al.*, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon Counter-Defendant Canon Financial Services, Inc.'s ("Canon," or "Counter-Defendant") Motion to Dismiss ("Motion," or "Mot.") (ECF No. 26) Counter-Plaintiff Direct Impressions, Inc.'s ("Direct Impressions," or "Counter-Plaintiff") Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons expressed below, Counter-Defendant's Motion is **GRANTED**.

I.  BACKGROUND

   A.  Factual Background[1]

This case arises from Canon's lease of printing equipment to Direct Impressions. Canon's initial Complaint centers on an alleged breach of the equipment leases by Direct Impressions and two other Defendants, Robert Boye, and Steven Delaney (collectively, "Original Defendants"). (ECF No. 1, Ex. A, Compl.). Direct Impressions has since counterclaimed under its own theories

---

[1] The Court presumes the parties' familiarity with the operative facts of this case, which we addressed more fully in our September 20, 2023, Opinion and Order. (ECF Nos. 19–20). We therefore review only the facts necessary to resolve the present Motion.

1

of breach of contract and the implied covenant of good faith and fair dealing, *see* (ECF No. 23, Countercl. ¶¶ 11–20), which Canon now seeks to dismiss through the present Motion.[2]

At bottom, Direct Impressions contends that the lease agreements included as a material term an obligation that Canon "provide service, maintenance and upkeep on the printers." (*Id.* ¶ 4). After Hurricane Ian impacted Southwest Florida—including Direct Impressions' business location in Fort Myers, Florida—on September 28, 2022, Direct Impressions suffered significant damage to its property and operations. (*Id.* ¶¶ 5–6). Although the leased printers remained operational after the storm, Direct Impressions alleges that Canon refused to service the printers and demanded that Direct Impressions "pay significant additional sums" to secure additional leases and equipment. (*Id.* ¶ 8). Direct Impressions further alleges that the economic impact of Hurricane Ian was "substantially multiplied" by Canon's actions in refusing to service the previously leased equipment "in the expectation that it would receive substantial sums in additional revenues from installing new machines." (*Id.* ¶ 9). Direct Impressions claims economic damage and disruption to its business as a direct result of Canon's actions. (*Id.* ¶ 10).

### B.     Procedural Background

Canon filed its initial Complaint in the Superior Court of New Jersey, Burlington County, on December 7, 2022. (ECF No. 1, Compl.). The Original Defendants timely removed to this Court on January 12, 2023. (*Id.*, Notice of Removal).[3] On February 16, 2023, the Original

---

[2] Although the instant Motion addresses the "*Defendants'* Counterclaim" in the collective sense, (Mot. 1) (emphasis added), the Counterclaim was filed solely on behalf of Direct Impressions. As a result, we construe the Counterclaim and corresponding Motion to Dismiss solely to address Direct Impressions and rephrase the Motion accordingly.

[3] The federal removal statute requires that the notice of removal be filed within thirty days after receipt by the defendant of a copy of the initial complaint or summons. 28 U.S.C. § 1446(b)(1). Because the Court does not have before it a record of when service was made upon the Original Defendants, and because the parties have not contested whether removal was untimely, we presume that removal was timely made.

Defendants filed a Motion to Dismiss, or in the Alternative, Transfer Venue, (ECF No. 10), which this Court denied in an Opinion and Order on September 20, 2023. (ECF Nos. 19–20).

On October 18, 2023, the Original Defendants filed an Answer and Direct Impressions filed a Counterclaim on its own behalf. (ECF No. 23, Countercl.). On November 2, 2023, Canon filed the instant Motion. (ECF No. 26, Mot.). On December 4, 2023, Direct Impressions filed a brief opposing the Motion. (ECF No. 33, Opp. Br.). On December 5, 2023, Canon filed a reply in support of its Motion. (ECF No. 35, Reply Br.). The matter is fully briefed and ripe for review.

## II.     JURISDICTION

The Court has subject-matter jurisdiction pursuant to the federal diversity and removal statutes. *See* 28 U.S.C. §§ 1332(a) and 1441. As discussed, the Original Defendants timely removed from the Superior Court of New Jersey, Burlington County, on January 12, 2023, alleging jurisdiction under § 1332(a) by claiming complete diversity of citizenship and an amount in controversy exceeding $75,000.[4] (Notice of Removal ¶ 3). Counter-Defendant Canon is a corporation incorporated in New Jersey, with its principal place of business in Mount Laurel, New Jersey. (*Id.* ¶ 4). Counter-Plaintiff Direct Impressions is a corporation incorporated in Florida, with its principal place of business in Cape Coral, Florida. (*Id.* ¶ 5). As discussed in the previous Opinion and Order, (ECF Nos. 19–20), the parties consented to the personal jurisdiction of this Court through a forum-selection clause, and we determined that the Court had personal jurisdiction over the parties and that venue in this Court is proper.[5] Because this matter was properly removed and the citizenship and amount-in-controversy requirements for diversity jurisdiction are met, the Court has subject-matter jurisdiction to hear the case.

---

[4] Canon seeks to recover at least $551,835.45. (Compl. ¶ 29; Notice of Removal ¶ 9).

[5] Pursuant to the forum-selection clause, New Jersey state law governs the leases in this matter. *See* (Compl. Exs. "A"–"B" ¶ 9.1; Exs. "C"–"D," Master Lease Terms ¶ 19; Ex. "E" ¶ 4).

**III.     LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826, 835 (3d Cir. 2011) ("Because we are considering a motion to dismiss, our review is restricted to the face of the counterclaim.").

When ruling on motions to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up). An exception to the general rule exists for a "document integral to or explicitly relied upon in the complaint," which the court may consider without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis removed). Put another way, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This exception is justified because concerns about lack of notice to the plaintiff are "dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (cleaned up). Moreover, if not for this exception, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

A complaint or counterclaim survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

We address in turn Direct Impressions' counterclaims for breach of contract and breach of implied duty of good faith and fair dealing.

### A. Breach of Contract

Under New Jersey law, "[a]n agreement to settle a lawsuit is a contract, which like all contracts, may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." *Brundage v. Est. of Carambio*, 951 A.2d 947, 961–62 (N.J. 2008) (quotation marks and citations omitted). To prevail on a claim for breach of contract, a plaintiff must prove four elements:

> first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a breach of the contract; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

*Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (cleaned up) (citing *Model Jury Charge (Civil)* § 4.10A (May 1998)).

Direct Impressions alleges that Canon's refusal to service the leased equipment in the wake of Hurricane Ian in September 2022 amounts to a breach of contract. It further alleges that Canon's refusal, combined with its demand that Direct Impressions purchase additional machinery at significant cost, caused injury to its business following the hurricane's impact. (Countercl. ¶ 9). Direct Impressions claims that Canon intended to "exploit the vulnerable position of [Direct Impressions] in the aftermath of Hurricane Ian to make more money" at Direct Impressions' expense. (Opp. Br. 2). Such exploitation, it contends, amounts to a material breach of the terms of the equipment leases. (Countercl. ¶ 13).

Canon argues in response that the leases make clear that it is merely the lessor and finance company for the leased equipment and that it "did not undertake any servicing, maintenance, or other obligations regarding the Equipment, nor [did] [it] make any warranties or representations regarding the Equipment." (Mot. 5). In support, Canon cites to specific language in the leases stating that Canon Solutions America, Inc. ("CSA")—an entity distinct from Counter-Defendant Canon Financial Services, Inc.—is instead the party responsible for any service or maintenance. (*Id.*). Canon therefore asserts that, although it takes no position regarding Direct Impressions' claims regarding service, any such claims should be made against CSA. (Reply Br. 2).

Consistent with Canon's representation, the First and Second Leases state: "The initial Lessor is Canon Financial Services, Inc. . . . Lessor does not and shall not assume any obligations under this Agreement. *CSA shall remain solely liable* for the performance of all service, maintenance, and warranty obligations described in this Agreement." (ECF Nos. 1, 11, 26, Exs. "A"–"B" ¶ 1.1) (emphasis added). Similarly, the Third and Fourth Leases state: "If a Lease Schedule includes payments for service and supplies, *CSA is responsible for providing the*

6

*service and supplies described* in the Lease Schedule in accordance with CSA's terms and conditions, of which Customer acknowledges receipt . . . Customer acknowledges that *CFS will not be responsible* for any service, repairs, or maintenance of the Equipment." (*Id.*, Exs. "C"– "D," Master Lease ¶ 7) (emphasis added).[6]

The express language of the contract makes clear that CSA—and explicitly *not* the Counter-Defendant—is responsible for servicing the leased equipment. Because of this, Counter-Plaintiff Direct Impressions cannot meet the third prong for a breach of contract claim, since Counter-Defendant Canon's refusal to service the machines does not amount to "not do[ing] what the contract required them to do." *See Globe Motor Co.*, 139 A.3d at 64. Any such claims are more likely to be properly raised against CSA, who is not a party to this case. As such, Direct Impressions' breach of contract claim must be dismissed.

### B.    Breach of Implied Duty of Good Faith and Fair Dealing

Nor can Direct Impressions sustain a claim for breach of implied duty of good faith and fair dealing. Direct Impressions claims that Canon's actions were "arbitrary, unreasonable, and capricious" and "impermissibly interfered with [Direct Impressions'] reasonable expectations under the contracts," (*Id.* ¶¶ 18–19). Canon responds by echoing its earlier assertion that CSA was the proper servicer for the equipment and noting that "[Direct Impressions] [has] not cited any other alleged misconduct, bad faith, or wrongdoing on the part of [Canon] in connection with the Leases, or any other basis for liability against [Canon]." (Mot. 11).

---

[6] Exhibits "A"–"D" of the initial Complaint (ECF No. 1), the brief opposing the prior Motion to Dismiss (ECF No. 11), and the instant Motion (ECF No. 26) each contain copies of the original lease agreements. Because Counter-Plaintiff had actual notice of and appeared to rely upon these documents in framing its Counterclaim, the Court incorporates each of them into its review of the present Motion. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

In New Jersey, every contract contains an implied covenant of good faith and fair dealing. *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 395 (N.J. 2005). Generally, New Jersey courts define good faith as "honesty in fact and the observance of reasonable conduct that does not violate community standards of fair dealing in the trade." N.J. Stat. Ann. 12A:2–103(1)(b). "There is no universally-accepted test for establishing a breach of the duty of good faith and fair dealing," but two elements appear with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract. *Soltis v. Catalent Pharma Sols.*, Civ. No. 23-567, 2023 WL 6990785, at *4 (D.N.J. Oct. 23, 2023) (citing *Brunswick Hills Racquet Club, Inc.*, 864 A.2d at 396). "[W]hen the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 271–72 (3d Cir. 2004).

In support of its claim, Direct Impressions states that Canon "acted in bad faith and with an improper motive" when it refused to service the equipment following Hurricane Ian in September 2022. (Countercl. ¶¶ 17–18). As discussed, however, it cannot be claimed that Counter-Defendant acted with improper motive or that it denied Counter-Plaintiff the benefit of its bargain, *see Soltis*, 2023 WL 6990785, at *4, through its refusal to service the leased equipment. Rather, the leases are expressly clear that CSA—not Counter-Defendant—was the proper servicer for the leased equipment. *See* (ECF Nos. 1, 11, 26, Exs. "A"–"B" ¶ 1.1, "C"–"D," Master Lease ¶ 7). Because the implied covenant of good faith and fair dealing cannot override the leases' express language, *see Fields*, 363 F.3d at 271–2, Counter-Plaintiff cannot maintain a cause of action for breach of covenant. Accordingly, that claim must be dismissed.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Counter-Defendant Canon's Motion to Dismiss (ECF No. 26) in its entirety. An Order follows.

Dated:  April 26, 2024              /s/ Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge